**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**MICHAEL ANTHONY CRIPPS, ET AL.** **CIVIL ACTION**

**VERSUS** **NO. 25-229-BAJ-EWD**

**DAVID M. FIELDS**

**RULING AND ORDER**[1]

Before the Court is the Plaintiffs' Motion to Compel Deposition Testimony in Accordance with the Crime-Fraud Exception to the Attorney-Client Privilege (the "Motion"),[2] filed by Michael Anthony Cripps and John David Cripps ("Plaintiffs"), which is opposed by David M. Fields ("Defendant" and/or "Fields").[3] The Motion will be denied because Plaintiffs have not established a prima facie case of fraud on the courts.

## I. Background

Plaintiffs filed this case on March 17, 2025, alleging that Defendant perpetuated fraud on the court by withholding public records in response to discovery requests in a 2012 case that was also before this Court. Defendant is the former Louisiana Department of Agriculture and Forestry ("LDAF") Assistant Director for Pesticide and Environmental Programs. The United States Court of Appeals for the Fifth Circuit described the 2012 case, *Cripps, et al. v. State of Louisiana Dept. of*

---

[1] A magistrate judge may "hear and determine" non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A). "A motion to compel is a nondispositive, pretrial discovery motion." *Tingle v. Hebert,* No. 15-626, 2017 WL 2543822, at *1 (M.D. La. June 12, 2017), citing *State Farm Mut. Auto. Ins. Co. v. Friedman*, No. 98-2918, 2002 WL 649417, at *1 (N.D. Tex. Jan. 14, 2002) (citing *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995)). *See Turner v. Hayden*, No. 15-2282, 2016 WL 6993864, at *1 (W.D. La. Nov. 29, 2016) ("The decision by Magistrate Hornsby to deny Turner's Motion to Compel Discovery is a non-dispositive matter."); *In re Tex. Bumper Exchange, Inc.*, No. 05-50305, 333 B.R. 135, 138 (Bkrtcy. W.D. Tex. Sept. 26, 2005) (holding bankruptcy court's order granting motion to compel discovery was an interlocutory order as the order concerned a nondispositive discovery issue and did not dispose of the merits of litigation).

[2] R. Doc. 34. Shortly after the Motion was filed, Plaintiffs sought leave to supplement with the deposition testimony of Defendant, which the Court allowed. R. Docs. 47, 52. Plaintiffs also filed a reply memorandum. R. Doc. 46.

[3] R. Doc. 38.

*Agriculture and Forestry, et al.*, Case No. 12-452 c/w Case No. 13-51, *Cripps v. State of Louisiana Dept. of Agriculture and Forestry* (the "2012 Case"), as follows:

> In the years following hearings before the Louisiana Department of Agriculture and Forestry ("LDAF" or the "Commission") for violations of Louisiana's Pest Control Laws, Plaintiffs Michael, David, and Willie Cripps filed this 42 U.S.C. § 1983 suit against Defendants LDAF and LDAF's Assistant Director David Fields ("Fields"), in his individual capacity. Plaintiffs contend that (1) Defendants retaliated against them for complaining before the Commission and others in violation of the First Amendment and Louisiana Constitution Art. I, § 7; (2) Defendants violated Plaintiffs' substantive due process rights under both the Fourteenth Amendment and Louisiana Constitution Art. I, § 2, following administrative rulings by the Commission that curtailed Plaintiffs' ability to continue their profession; and (3) the Commission imposed excessive fines on Plaintiffs in violation of both the Eighth Amendment and Louisiana Constitution Art. I, § 20.[4]

In their original Complaint, Plaintiffs allege that on February 1, 2013, as part of the 2012 Case, Plaintiffs propounded Requests for Production of Documents, including the following document requests:

> (12) Audio-tapes of any discussions of the members of the Structural Pest Control Commission and/or any of their staff in which the names Michael Cripps and/or John David Cripps were mentioned;
>
> …
>
> (19) Audio-tapes of the meetings of the Structural Pest Control Commission on January 27, 1999, May 1, 2000, June 8, 2000, October 4, 2000, October 31, 2000, July 7, 2011, and August 3, 2011.[5]

Defendants in the 2012 Case responded:

> "See enclosed Compact Disc." And "A Compact Audio Disc of the August 3, 2011 meeting is enclosed. No such record exists for the requested dates of January 27, 1999, May 1, 2000, June 8, 2000, October 4, 2000, October 31, 2000, or July 7, 2011.[6]

---

[4] Case No. 12-452, R. Doc. 123, p. 5.

[5] R. Doc. 1, ¶ 25.

[6] *Id.* at ¶ 26.

At the summary judgment stage of the 2012 Case, the Court dismissed the plaintiffs' claims, finding that "there [was] no evidence that the Commission's decision was based on anything other than attempting to require compliance with other actions."[7] The plaintiffs in the 2012 Case appealed the Court's summary judgment Ruling. The Fifth Circuit affirmed the Court's Ruling, and the United States Supreme Court denied certiorari.[8]

On March 17, 2025, Plaintiffs filed this lawsuit for fraud on the court, alleging that Defendants' discovery responses in the 2012 Case were false, fraudulent, and incomplete.[9] Plaintiffs assert that Defendant and his attorneys designed the discovery responses in the 2012 Case to conceal the anti-competitive and improper activities alleged.[10]

Plaintiffs further allege that, in 2017, after Defendant retired, they made a public records request to the Structural Pest Control Commission (the "Commission").[11] The new Director of the Commission allegedly readily located the audio tapes of the January 27, 1999, and April 18, 2001 Commission meetings.[12] Plaintiffs claim these audio tapes, which were deliberately concealed from them, substantiate their claims asserted in the 2012 Case.[13] Plaintiffs also allege that one or more of "Defendant[‘s] attorneys of record was either actually involved in concealing the aforementioned audio tapes or failed in his duties to provide the Plaintiffs with complete and authentic responses to the lawful discovery requests propounded by the Plaintiffs."[14]

---

[7] *Id.* at ¶ 31.

[8] Case No. 12-452, R. Docs. 123, 124.

[9] R. Doc. 1, ¶ 35.

[10] *Id.*

[11] *Id.* at ¶ 36.

[12] *Id.*

[13] *Id.*

[14] *Id.* at ¶ 38.

On May 14, 2025, Defendant filed a Motion to Dismiss, alleging Plaintiffs failed to establish a claim of fraud on the court based on the facts alleged in the Complaint.[15] The Court agreed that Plaintiff failed to state a claim for fraud on the court, and dismissed Plaintiffs original Complaint without prejudice to filing an amended complaint that addressed the deficiencies raised in the Court's Ruling and Order granting the Motion to Dismiss.[16]

On March 26, 2026, Plaintiffs filed an Amended and Superseding Complaint ("Amended Complaint") asserting more detail regarding their claims. In the Amended Complaint, Plaintiffs maintain their claim for fraud on the court, providing more details as to how Defendant; Defendants' assistant, Mary Anderson; and attorneys Travis Denicola, Marvin Montgomery, and Kevin Landreneau allegedly withheld the tapes at issue. The Amended Complaint further reasserts Plaintiffs' claims for violation of due process from the 2012 Case based on the newly discovered audio tapes.[17]

In the Motion, Plaintiffs seek to pierce attorney-client privilege in the depositions of Defendant and the aforementioned attorneys as to each person's participation in the preparation of the allegedly fraudulent discovery responses from the 2012 Case.[18] Each attorney asserted attorney-client privilege related to the compilation of the discovery responses in dispute.[19] While the parties agree that the information sought is privileged, Plaintiffs contend that Defendant and his attorneys should be compelled to answer questions regarding the compilation and issuance of the discovery responses at issue from the 2012 Case based on the crime-fraud exception to attorney-client privilege.

---

[15] R. Doc. 13.

[16] R. Doc. 32.

[17] R. Doc. 33.

[18] R. Doc. 34.

[19] R. Doc. 34-2, p. 6; R. Doc. 34-3, p. 5; R. Doc. 34-4, p. 6.

Defendant opposes the Motion, stating that Plaintiffs fail to establish a prima facie case of fraud on the court, which is necessary to vitiate the attorney-client privilege and compel Defendant and the attorneys to testify as to privileged matters.[20] Plaintiffs filed a reply memorandum, reasserting their allegations that they are entitled to depose the attorneys and Defendant regarding the 2012 discovery responses and further attaching an expert report from a Certified Fraud Examiner detailing his opinion on whether the tapes were fraudulently concealed.[21] The Court held a hearing on the Motion on November 5, 2026.

## II. Law and Analysis

### A. Applicable Legal Standards

The attorney-client privilege "exists to encourage full disclosure of pertinent information by clients to their attorneys."[22] This privilege extends "to past criminal violations" because "the client, given the nature of [an] adversary system, has a legitimate interest in securing informed representation without fear of forced disclosure."[23] However, a client "has no legitimate interest in seeking legal advice in planning future [or ongoing] criminal activities."[24] The crime-fraud exception vitiates attorney-client privilege if "the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme."[25] The exception applies in rare circumstances.[26] The crime-fraud exception vitiates the privilege if "the client consults an

---

[20] R. Doc. 38.

[21] R. Doc. 46.

[22] *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982).

[23] *Id.*

[24] *Id.*

[25] *Id.* (citations omitted).

[26] *Raymond v. Unum Grp.*, No. 20-352, 2022 WL 10208218, at *5 (M.D. La. Oct. 17, 2022) (citations omitted).

attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme."[27]

The Fifth Circuit used a three-step analysis in *Lewis v. Crochet* to determine whether the crime-fraud exception applies to allow the discovery of privileged information.[28] The three-step test evaluates: (1) whether the movant made a prima facie showing a crime or fraud was committed, (2) the privileged communications were held in furtherance of that crime, and (3) the communications were reasonably related to the fraudulent or criminal activity. Plaintiffs agreed at the hearing that this three-step test governs the application of the crime-fraud exception in this case. Additionally, if Plaintiffs do not establish a prima facie case, the Court need not proceed to evaluate the other portions of the test.[29]

**B. Prima Facie Case**

"In order to invoke [the crime-fraud] exception, the party seeking to breach the walls of privilege must make out a prima facie case."[30] To make such a showing, the party must produce evidence that will satisfy the determination that the exception applies until contradicted or overcome by other evidence.[31] Included in the prima facie case of fraud is evidence of an intent to deceive.[32] Plaintiffs' claim "that one or more of the Defendant's three (3) attorneys participated in the

---

[27] *Lewis v. Crochet*, 105 F.4th 272, 282 (5th Cir. 2024).

[28] *Id.*

[29] *See Raymond*, 2022 WL 10208218, at *5 (holding that plaintiff had not made a prima facie case of fraud and not evaluating whether certain privileged communications were related to any alleged crime or fraud as a result).

[30] *Lewis,* 105 F.4th at 282, citing *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982).

[31] *See In re Grand Jury Proceedings in the Matter of Fine*, 641 F.2d 199, 203 (5th Cir. 1981); *see also In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005) ("To make the necessary *prima facie* showing for the application of the crime-fraud exception here, the government must produce evidence 'such as will suffice until contradicted and overcome by other evidence ... a case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded.'") (citing *In re Grand Jury Proceedings in the Matter of Fine*, 641 F.2d at 203); *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986) ("Once the party seeking disclosure makes a prima facie case that the attorney-client relationship was used to promote an intended criminal activity, the confidences within the relationship are no longer shielded.").

[32] *S. Scrap Material Co. v. Fleming*, No. 01-2554, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003).

preparation and filing of falsified discovery responses, which responses are the basis for the Plaintiffs' fraud on the court claims."[33] As previously outlined by the Court in this case:

> Fraud on the Court requires a "deliberately planned scheme," which fraudulently debases the integrity of the judicial process in a manner involving "far more than an injury to a single litigant." *Domingue v. TA Operating, LLC,* No. CV 21-606-SDD-RLB, 2023 WL 174967, at *4 (M.D. La. Jan. 12, 2023) (citing *Ballew v. U.S. Dep't of Justice*, 244 F.3d 138 (5th Cir. 2000) (quoting *Rozier v. Ford Motor Company*, 573 F.2d 1332, 1338 (5th Cir. 1978)). "[T]he standard for fraud on the [C]ourt is demanding: 'Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute fraud on the [C]ourt." *Domingue*, 2023 WL 174967, at *4 (citing *Ballew*, 244 F.3d at 38; *Rozier*, 573 F.2d at 1338). "Less egregious misconduct, such as a failure to disclose pertinent facts in the matter before the court, ordinarily will not suffice." *Domingue*, 2023 WL 174967, at *4 (citing *Ballew*, 244 F.3d at 138; *Rozier*, 573 F.2d at 1338). . . . The Fifth Circuit has made clear that "[w]here the wrong is only between the parties and there has been no direct assault on the integrity of the judicial process itself, the federal courts have refused to invoke the doctrine of fraud on the [C]ourt." *Ballew*, 244 F.3d 138 (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures* § 2870 at 416 (2d. ed. 1987)). Fraud on the Court requires a "scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving 'far more than an injury to a single litigant.'" *Ballew*, 244 F.3d 138 (citing *Addington v. Farmer's Elevator Mutual Insurance*, 650 F.2d 663, 668 (5th Cir. 1981) (quoting *Hazel-Atlas Glass*, 322 U.S. 288, 245-46 (1944).[34]

"Bare suspicions of fraud or criminal conduct … are not sufficient to establish the prima facie case.[35]

**1. Evidence provided by Plaintiffs for the first time in reply or at the hearing will not be considered**

At the outset, the Court must address what evidence is properly considered on the Motion. The following evidence is attached to the Motion: 1) excerpts from the deposition testimony of each of the three lawyers at issue; 2) a listing of page numbers for the relevant portions of Defendant's deposition; 3) excerpts from Defendant's deposition.[36]

---

[33] R. Doc. 34-1, p. 1.

[34] *See* R. Doc. 32, pp. 6-7.

[35] *In re McDowell*, 483 B.R. 471, 490 (Bankr. S.D. Tex. 2012).

[36] R. Docs. 34-2 through 34-4; 34-6; 34-7.

At the November 5, 2026 hearing, Plaintiffs' counsel requested leave to supplement the Motion with the following additional evidence: 1) the Notice of Deposition for Production of Documents Only and Notice of Supbpoena [sic] Duces Tecum to Commissioner Michael G. Strain ("Subpoena"), which is undated and unsigned, but which was propounded in the 2012 Case;[37] 2) Defendants Response to Plaintiffs Notice of Deposition for the Production of Documents Only and Notice of Subpoena Duces Tecum to Commissioner Michael Strain, which is also undated, but was signed by Denicola in the 2012 Case ("Subpoena Response");[38] excerpts from the deposition of Harry Schexnayder;[39] and the expert report of Daryl Purpera ("Purpera"), and excerpts from Purpera's deposition.[40] Defendant objects to the supplementation of the Motion with this additional evidence.

Plaintiffs' oral request to supplement the Motion will be denied as Plaintiffs have not established good cause for the relief sought and the Court has the discretion to disregard evidence raised for the first time in reply memorandum. Plaintiffs' counsel was questioned at the hearing regarding why these documents were not included with the original Motion, but he could not provide a satisfactory response.

Plaintiffs' request is essentially the equivalent of presenting new evidence for the first time in reply.[41] It is well-settled that courts in this Circuit generally will not consider evidence and arguments raised for the first time in a reply brief.[42] Additionally, Plaintiffs have not shown good

[37] R. Doc. 39-10.

[38] R. Doc. 39-11.

[39] R. Doc. 54-5.

[40] R. Docs. 46-1; 46-2; 46-3.

[41] In fact, Purpera's expert report and portions of his deposition are attached to Plaintiffs' reply memorandum in support of the Motion. Purpera's full deposition is attached to Defendant's Motion for Summary Judgment. *See* R. Doc. 39-6. The other documents are elsewhere in the record.

[42] *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989) (citations omitted; collecting cases) (refusing to consider arguments raised for the first time in reply); *Bolton v. United States*, 946 F.3d 256, 262 (5th Cir. 2019)

cause to consider the additional evidence because almost every item with which Plaintiffs seek to supplement the Motion existed when the Motion was filed. The Subpoena and Subpoena Response are from the 2012 case. Harry Schexnayder was deposed on February 24, 2026, more than a month before the Motion was filed.[43] Purpera's expert report is dated October 6, 2025—almost six (6) months before the Motion was filed.[44] The only evidence Plaintiffs seek to add to the Motion that did not exist when the Motion was filed is the excerpt of Purpera's deposition, which was not taken until April 15, 2026.[45] However, without the benefit of the report, it is not clear what evidentiary value the deposition excerpts would have. For example, in responding to the question of whether it is Purpera's opinion that the audio recordings were intentionally withheld by LDAF, Purpera references the conclusions he gave in his report.[46]

As Plaintiffs have failed to establish good cause for their request to supplement the Motion, the request will be denied.

### 2. Plaintiffs fail to establish a prima facie case on the evidence attached to the Motion

Considering only the evidence attached to the Motion, Plaintiffs fails to establish a prima facie case of fraud on the court.[47] Plaintiffs do not point to any testimony from the lawyers in the

---

(refusing to consider argument raised for the first time in reply because "[a]rguments raised for the first time in a reply brief are waived."); *Monterey Rsch., LLC v. Renesas Elecs. Corp.*, No. 24-238, 2025 WL 1953107, at *6 n.3 (E.D. Tex. July 16, 2025) ("The Court disregards new arguments and statements raised for the first time in a reply brief."); *TracBeam, LLC v. Apple, Inc.*, No. 14-680, 2015 WL 5786449, at *2 (E.D. Tex. Sept. 29, 2015) (noting that a movant includes a significant amount of new evidence in its reply brief at its peril); *Fut. Link Sys., LLC v. Adv. Micro Devs., Inc.*, No. 20-1176, 2021 WL 6015535, at *5 (W.D. Tex. Oct. 18, 2021) (exercising discretion to disregard evidence raised for the first time in reply).

[43] R. Doc. 54-5, p. 1.

[44] R. Doc. 46-2.

[45] R. Doc. 46-1, p. 1.

[46] R. Doc. 46-1, p. 4 (deposition transcript p. 32). Purpera's report is presumably attached to the full deposition as an exhibit, but is not attached to the excerpts submitted by Plaintiffs with their reply memorandum.

[47] Plaintiffs also argue that "[t]his Court has, at least implicitly, held in its ruling of March 6, 2026 … that the Complaint plausibly alleges fraud between the parties in this case," such that Plaintiffs should be allowed to obtain discovery regarding the attorney's roles, if any, in the falsification of the Subpoena Response. R. Doc. 34-1, p. 3. However, the

deposition excerpts attached to the Motion that the attorney-client relationship in the 2012 Case was used to promote an intended criminal or fraudulent activity. For example, in response to questions about the Subpoena Response, Mr. Denicola's counsel states: "[F]or the record, I would, on behalf of Mr. Denicola, would also ask that this line of questioning either stop until we get some clarity from the Court. Or that we on behalf of Mr. Denicola, he is all – we are also asserting the same objection because it was an attorney-client privilege between Mr. Fields and Mr. Denicola at the time, even though it's not today."[48] Mr. Montgomery's and Mr. Landreneau's depositions were voluntarily suspended by Plaintiffs' counsel "pursuant to the stipulation" to seek the court's guidance on the attorney-client privilege/crime fraud exception issues.[49] As discussed at the hearing, the privilege does not belong to the attorneys, but to the client, such that "[a]n attorney can neither invoke nor waive the privilege if his client desires the contrary."[50] Additionally, it is generally impermissible to draw an adverse inference from the assertion of attorney-client privilege.[51]

The other evidence attached to the Motion is excerpts of Defendant's deposition. Plaintiffs also do not point to any information in Defendant's deposition testimony that supports their prima

---

Court expressly declined to reach the issue of whether Plaintiffs had stated a general fraud claim in the original Complaint. R. Doc. 32, p. 5, n.1.

[48] R. Doc. 34-2, p. 6.

[49] R. Doc. 34-3, p. 7; R. Doc. 34-4, p. 6.

[50] *Russell v. Curtin Matheson Scientific, Inc.*, No. 76-881, 1980 WL 374, at * 1 (S.D. Tex. April 15, 1980) (citation omitted).

[51] Plaintiffs seemingly argue in their reply memorandum (*see* R. Doc. 46, pp 1-2) that the invocation of the privilege itself is evidence of a prima facie case of fraud, which this Court has previously rejected. *Broyles v. Cantor Fitzgerald & Co.*, No. 10-854, 2016 WL 7656028 (M.D. La. Sept. 8, 2016) ("Generally speaking, it is impermissible to draw an adverse inference from the assertion of the attorney-client privilege. *See In re: General Motors, LLC Ignition Switch Litigation*, 2015 WL 8130449 (S.D.N.Y. Dec. 3, 2015). Although 'mere reference to the fact that a conversation between attorney and client occurred is not privileged,' such evidence is prohibited if it is solely being offered to 'enable the jury to draw an adverse inference therefrom.' *Beraha v. Baxter Healthcare Corp.*, 1994 WL 494654, at *3 (N.D. Ill. Sept. 6, 1994). 'To allow otherwise would effectively "honor the shield of the attorney-client privilege," while simultaneously allowing an opposing party to "use it as a sword to prove its case."' *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2016 WL 278054, at *2 (E.D. Pa. Jan. 22, 2016) (quoting *McKesson Info. Sol's., Inc. v. Bridge Medical, Inc.*, 434 F.Supp.2d 810, 812 (E.D. Cal. 2006)).").

facie case that the crime-fraud exception is met.[52] When asked about who provided the information that is referred to in the Subpoena Response that no records exist, Defendant responded that he does not know who provided the information.[53] Defendant explains that it was Mary Anderson ("Anderson"), his assistant at the time, who was tasked with searching for the tapes and that Defendant did not remember Anderson telling him that there were any tapes missing or gone.[54] Finally, while Defendant concedes that he learned during this litigation that the tapes were located, he states that he does not have any explanation for that.[55]

Plaintiffs' counsel conceded at the hearing that, because the privilege belongs to Defendant, Plaintiffs must show that Defendant participated in the alleged crime or fraud to pierce the attorney-client privilege. However, Defendant's deposition excerpts do not establish his participation in the alleged fraud, which was the preparation of the Subpoena Response and alleged concealment of tapes.

Plaintiffs' Motion will be denied because the attached evidence fails to establish a prima facie case that Defendant participated in any fraudulent attempt to conceal documents or otherwise perpetuate fraud on the court through the preparation and issuance of the Subpoena Response.

---

[52] Defendant was deposed after the briefing on the original Motion. Plaintiffs sought leave to supplement the Motion with excerpts of Defendant's deposition testimony, which the Court granted. R. Docs. 47, 52. Plaintiffs did not seek to supplement the Motion with additional argument regarding Defendant's deposition testimony.

[53] R. Doc. 34-7, pp. 3-4 (deposition transcript pp. 21, 22-23). Defendant asserted attorney client privilege when asked whether Mr. Denicola made any efforts to verify the accuracy of the Subpoena Response after stating that he did not know if Mr. Denicola made any efforts. Defendant also asserted the privilege when asked whether he "told" Mr. Denicola, Mr. Landreneau, or Mr. Montgomery that the tapes did not exist. R. Doc. 34-7, pp. 6-7 (deposition transcript pp. 33-36). However, Defendant had already answered that he did not know who provided the information in the Subpoena Response.

[54] R. Doc. 34-7, pp. 3, 9 (deposition transcript pp. 21, 64).

[55] R. Doc. 34-7, p. 10 (deposition transcript pp. 67-68).

### 3. Even if the additional evidence on which Plaintiffs rely is considered, they fail to establish a prima facie case

Even if the Subpoena and Subpoena Response from the 2012 case,[56] excerpts from the deposition of Harry Schexnayder,[57] and Purpera's deposition and expert report[58] were considered, Plaintiffs would still fail to establish a prima facie case of fraud on the court.

#### *a. The Subpoena and Subpoena Response*

Relevant to the Motion, the Subpoena and Subpoena Response state as follows:

> (12) Audio-tapes of any discussions of the members of the Structural Pest Control Commission and/or any of their staff in which the names Michael Cripps and/or John David Cripps were mentioned;
>
> ***See enclosed Compact Disc.***
>
> …
>
> (19) Audio-tapes of the meetings of the Structural Pest Control Commission on January 27, 1999, May 1, 2000, June 8, 2000, October 4, 2000, October 31, 2000, July 7, 2011, and August 3, 2011.
>
> ***A Compact Audio Disc of the August 3, 2011 meeting is enclosed.***
>
> ***No such record exists for the requested dates of January 27, 1999, May 1, 2000, June 8, 2000, October 4, 2000, October 31, 2000, or July 7, 2011.***[59]

The Subpoena Response is signed by Travis Denicola.[60]

First, as noted above, the evidence before the Court actually shows Fields lack of involvement in the issuance of the subpoena response. Fields testified that he does not know who provided the information in the Subpoena Response and that Anderson (not he) was the person tasked with locating the requested documents.[61] While Plaintiffs' counsel argued at the hearing that

---

[56] R. Doc. 39-10; R. Doc. 39-11.

[57] R. Doc. 54-5.

[58] R. Docs. 46-1; 46-2; 46-3.

[59] R. Doc. 39-11, pp. 3-4.

[60] R. Doc. 39-11, p. 4.

[61] R. Doc. 34-7, pp. 3-4, 9 (deposition transcript pp. 21-22, 64).

it should be reasonably inferred from Fields's deposition testimony that he spent twelve hours in connection with the Subpoena Response that he had a larger role in the document search and/or crafting of the Subpoena Response, first, that evidence is not properly before the Court on the Motion. Further, Plaintiffs' counsel's inference is not supported by Defendant's testimony, even if it were considered. In Defendant's deposition in this case the following exchange takes place:

> **Q** Okay. Now, you said that – if I'm recalling correctly, I deposed you originally in the first case on November the 6th, 2013. Did you go back and read that deposition again in preparation for this deposition?
>
> **A** No.
>
> **Q** Okay. Do you recall telling me how long you spent in your time in responding to these discovery requests that were made by the Cripps?
>
> **A** No, I don't.
>
> **Q** Okay. And do you recall – and I can tell you -- I can represent to you if you want the numbers, I can give them to you, but you spent a substantial amount of time in responding to these discovery requests. Do you remember that?
>
> **A** No.
>
> **Q** Okay.
>
> > MR. HEADRICK:
> > I'm going to lodge an objection to form here.
> >
> > MR. SMITH:
> > Okay.
>
> **Q** Do you remember, as you said, that you spent 12 hours?
>
> **A** No, I don't remember.
>
> **Q** Okay. Do you remember how you spent those – assuming you spent 12 hours, assuming that's what you said and I'll show it to you if you want. Do you remember how you spent that time?
>
> **A** No.
>
> **Q** Do you remember who you met with?

**A** No.[62]

At the hearing, the Court questioned Plaintiffs' counsel about where the information regarding the alleged twelve hour time period that Fields spent responding to the Subpoena originated because it was not clear from the above testimony. Plaintiffs' counsel ultimately pointed to the transcript of Defendant's November 6, 2013 deposition in the 2012 Case.[63] That evidence is also not properly before the Court on the Motion. More importantly, however, and as discussed at the hearing, Fields does not testify that he spent twelve hours responding to the Subpoena. Instead, the entire exchange between counsel and Fields in the referenced pages of his 2013 deposition is related to Fields's preparation *for the deposition*.[64] Further, because Plaintiffs' counsel referenced Fields's 2013 deposition, he was questioned by the Court as to whether Fields also testified in that deposition that he had never seen the Subpoena Response before he was shown it at the deposition. Plaintiffs' counsel stated he was not sure. Fields did so testify, further weakening Plaintiffs' effort to link him to the basis for the alleged fraud here—the inaccurate Subpoena Response and any intentional concealment of the tapes at issue.[65] As Plaintiff must show an intent to deceive to prove a prima facie case of fraud,[66] and Fields deposition testimony does not show that Fields had any such intent, Plaintiffs fail to meet their burden.

Plaintiffs' counsel acknowledged at the hearing that Plaintiffs must show Fields's involvement in the alleged fraud (or crime) to invoke the crime-fraud exception to attorney-client

---

[62] R. Doc. 34-7, p. 5 (deposition transcript pp. 26-27).

[63] R. Doc. 54-3, pp. 21-26. The testimony regarding Fields's deposition preparation actually begins at R. Doc. 54-3, p. 13.

[64] *Id.*

[65] *See, e.g.*, R. Doc. 54-3, p. 29 (Q. I'll ask you to take a look at No. 1 and ask you if you are familiar with that document, sir. A. No, sir, I don't think I've ever seen this document before). Exhibit 1 to the deposition is the Subpoena Response. R. Doc. 54-3, pp. 321-324. *See also, id.*, p. 42 (A. As I said earlier, I've never seen this document until you handed it to me.).

[66] *S. Scrap Material Co.*, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003).

privilege.[67] Crucially, and fatal to Plaintiffs' invocation of the exception, even the record evidence outside that attached to the Motion fails to do so.

*b. The Purpera Report and Deposition Testimony*

In reply, Plaintiffs, without explaining the relevance, attach Purpera's report, which states, based on his expertise as a Certified Fraud Investigator, that "[i]t is my opinion that the audio recordings were either intentionally withheld or withheld based on negligent practices from the Plaintiffs and court by LDAF."[68]

In addition to not being originally attached, and therefore not properly before the Court on this Motion, Purpera's report and opinions are the subject of a pending Motion in Limine, filed by Defendant, which seeks to have Purpera's opinions excluded or limited in this case, further calling into question whether it is proper to consider them at this juncture.[69] Even if considered, Purpera's report is insufficient to establish Plaintiffs' prima facie case because he does not specifically conclude that the audio recordings were intentionally withheld at all since he also suggests that the recordings may have been withheld based on "negligent practices," nor does Purpera specifically attribute any withholding of the audiotapes to Defendant. Negligence, whether slight or great, is not equivalent to fraud. Instead, fraud on the court applies to only "the most egregious misconduct" which necessarily implicates the party's "willfulness to actively deceive."[70] The evidence on which Plaintiffs rely does not show that Fields had any intent to deceive.[71]

[67] *Lewis*, 105 F.4th at 282 ("The crime-fraud exception vitiates attorney-client privilege if '*the client* consults an attorney for advice that will assist *the client* in carrying out a contemplated illegal or fraudulent scheme.'") (emphasis added).

[68] R. Doc. 46-2, p. 9.

[69] R. Doc. 40.

[70] *National Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 220 (5th Cir. 2023).

[71] *S. Scrap Material Co.*, 2003 WL 21474479, at *2 (E.D. La. June 18, 2003).

In his deposition, Purpera reiterated his opinion from the report that the audiotapes were either intentionally withheld or withheld based on negligent practices.[72] Purpera further stated that there is no evidence on which he is relying that Fields or Anderson or any attorneys found the audiotapes and did not disclose them.[73] He also acknowledged that it was possible the tapes were not found or that LDAF personnel looked for the documents and could not find them.[74] Purpera also testified that it is possible the records left a central physical facility at some point and came back later.[75] These acknowledgements also cut against a prima facie case of fraud on the court.

c. *Schexnayder Deposition*

A large part of Plaintiffs' argument that the Subpoena Response was fraudulent is because the audiotapes at issue were eventually located. Plaintiffs rely on the deposition testimony of Harry Schexnayder, who also served as a past Director of the Commission after Fields. Though this evidence is not properly before the Court on this Motion, it also does not prove a prima facie case of fraud, if considered. Even Schexnayder says he was only able to provide what could be located in response to the Cripps' public records requests and that he does not think all the audiotapes were located.[76] Schexnayder also testified that he delegated the task of responding to the public record request to the assistant director.[77] In other words, similarly to Defendant's testimony on this issue, Schexnayder did not prepare the response himself. Further, Schexnayder's description of the

[72] R. Doc. 39-6, pp. 8-9 (deposition transcript pp. 32-33).

[73] R. Doc. 39-6, p. 10 (deposition transcript pp. 38-39).

[74] *See* R. Doc. 39-6, pp. 9, 11-12 (deposition transcript pp. 33, 44 (acknowledging a third circumstance where the records were not found and the state attorneys did not insist on trying to find them), deposition transcript p. 48 (stating that it is possible that LDAF looked hard for the records and could not find them)).

[75] R. Doc. 39-6, p. 12 (deposition transcript p. 46).

[76] R. Doc. 54-5, pp. 18, 23-27.

[77] R. Doc. 54-5, p. 20.

location where the audiotapes were eventually located does not support Plaintiffs' prima facie case of fraud on the court. On this point, Schexnayder testified as follows:

> **Q.** So you delegated a Cripps request to Kelly Moore.
>
> **A**. Yes, sir.
>
> **Q.** She was assistant director. Do you know if she's still with the department?
>
> **A.** She is. She's the director.
>
> **Q.** Okay. All right. And to your knowledge, did she obtain the audiotapes?
>
> **A.** As much as we could find, yes.
>
> **Q.** Okay. Do you know or did she describe to you what she did in terms of locating those tapes?
>
> **A.** No. Again, my memory was – is that when I became aware of the tapes, my memory was okay, so in the department, we have a room where we have copy machines and a mailroom and various things in that room.
>
> **Q**. This is the room on the structural pest control?
>
> **A.** Well, it's just the pesticide divisions as a whole.
>
> **Q.** I see.
>
> **A.** All of it together.
>
> **Q.** Okay.
>
> **A.** And behind that room is a closet. And in that closet there was a box of tapes. I don't know if they were originally in that closet, but when I became involved, that's where they were. I don't know if they were originally found. So we have warehouses behind the Department of Agriculture, the department has warehouses where they store documents for records and very well organized. It got better organized before I left. But, you know, every division had their area in this. And again, I'm not sure if the tapes were there to begin with and they got brought up to the front, so there's a lot of records in the department. So you're working current records and some records after they – it depends on your record-retention policy. After so many years in the front office or in the working area of the Department of Agriculture, they're moved into a records location, like an archive place where they're stored. So you will have more current records up front where the offices are and then also other records that are older stores in boxes in the back in a warehouse. I

> can't tell you for sure if the tapes were ever in the back. All I can tell you is my memory was they were in a room. My memory was they were in the top of a paper box. So you have paper boxes and then, you know, the top is kind of shallow. And there was a number of tapes in that for a number of years for the – for the Structural Pest Control Commission and the Advisory Commission on Pesticides and dated and, you know.[78]

Schexnayder specifically testified that he did not know anything about how the Subpoena Response was handled in 2013; that he has no evidence that Defendant hid the tapes in response to the Subpoena; that he has no evidence that Defendant fraudulently failed to produce the tapes in response to the Subpoena; and that he has no evidence as to whether Defendant knew where the tapes were in 2013.[79] The fact that the audiotapes (or some of them) that were requested in 2013 were ultimately located later in the top of a paper box in a closet in a different location from where Schexnayder testified they would be expected to be kept, which was the warehouse given their age, is also not sufficient to establish Plaintiffs' prima facie case of fraud on the court. This is particularly true when Schexnayder testified that he had no evidence that Defendant hid the tapes, fraudulently responded to the Subpoena, or even knew where the tapes were in 2013.

## III. Conclusion

Whether considering only the evidence submitted with the Motion or the additional evidence upon which Plaintiffs rely, they have failed to make a prima facie showing of fraud on the court sufficient to support the crime-fraud exception to the attorney-client privilege.[80] Therefore, Plaintiffs' Motion must be denied. Accordingly,

---

[78] R. Doc. 54-5, pp. 21, line 12 – p. 23, line 14. Later in his deposition, Schexnayder explains that, when a public records request is received, the office would look to see when the record was produced. If it was in the last three years, it would probably be in the front office. If it was older than that, it would probably be in the warehouse archives. R. Doc. 54-5, pp. 39-40.

[79] R. Doc. 54-5, p. 50.

[80] To the extent Plaintiffs request in camera review of the information at issue in the case, this request will be denied because Plaintiffs have not established a prima facie case for application of the crime-fraud exception. *Fairchild v. Liberty I.S.D.*, No. 06-92, 2007 WL 9724524, at *3 (E.D. Tex. May 10, 2007) ("Since Fairchild cannot establish a *prima facie* case for application of the crime-fraud exception, this Court sees no need to conduct an *in camera* review…").

**IT IS ORDERED** that the Plaintiffs' Motion to Compel Deposition Testimony in Accordance with the Crime-Fraud Exception to the Attorney-Client Privilege,[81] filed by Plaintiffs Michael Anthony Cripps and John David Cripps, is **DENIED.**

Signed in Baton Rouge, Louisiana, on November 16, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

[81] R. Doc. 34.